Mr. Justice Wylie
delivered the opinion of the court:
The object of this suit is to procure a construction of the last will and testament of the late John P. Hilton. The testator by this will directs, in the first place, all his debts and funeral expenses to be paid out of any portion of the estate which should first come into the hands of the executors. The personal estate being the primary fund, is, therefore, first liable for these objects. But one specific devise is contained in the whole will. This devise gives to Oarberry T. Hilton and three of his sons, grandchildren of the testator: “ all that part of lot eight, in Davidson’s subdivision of square two hundred and fifteen, fronting on Fourteenth street west, between L and M streets north.” The complainants claim that by these words the devisees take but the half of the lot, namely, that which fronts on Fourteenth street; and that the other half, which fronts on Vermont avenue, not having been devised by these words, has descended to the heirs at law. The whole lot, however, fronts on Fourteenth street, and has never been divided by any line running north and south, is very shallow between the streets, and terminates in a point where the two streets meet at a very acute angle, so as not to be susceptible of partition'by such a line without great Injury to the property. No man in his senses would think of dividing the lot by such a line.
The testator, however, in the subsequent part of this clause, carefully explains what he meant by the words, “ all that part of lot 8 fronting on Fourteenth street,” by these words: “ that is to say, one-half of said lot and improvements to the said Oarberry S. Hilton in fee-simple, and the remaining half, as he may choose, to him, the said Oarberry S. Hilton, in trust, for the sole use and benefit of his said children,” naming them. We think, therefore, that it was the intention of the testator *87 in this instance to devise the whole of the lot, and not merely the half, and that the language of the will can take that construction without violence. The rule of interpretation applicable to cases like this may be found laid down by Lord Alvany in Sims vs. Doughty, 5 Ves., 243, and by Lord Mansfield in Doe vs. Briggs, 2 Taunt., 109.
Next we have the bequest contained in the second “ item.”
In this item the testator directs that all of his estate, except that specifically devised and bequeathed, should be sold, and the proceeds divided among a number of legatees, who are named, in the proportions assigned for each, as far as such proceeds would allow. In this direction the terms used are “ all my estate.” That includes both real and personal property. The object to be accomplished was the payment of the legacies specified, not the division of the whole proceeds among the legatees, whatever might be the amount of such proceeds. The property was to be sold for this one particular purpose : the payment of legacies, as specified in the amounts given the several legatees named. The testator, indeed, so far from directing by this clause a conversion of the real estate into money, for. the general purposes of the will, seems clearly to have thought that the proceeds would fall short of .paying the legacies in full; for he provides that in such case they should abate in proportion among themselves, and makes no provision in case of a surplus. Here, then, is both real and personal property directed to be sold for the purpose of paying particular legacies, each of a specified amount; and how are the executors to discharge the trust in such a •case ? Certainly the personal estate is first to be exhausted, and should that prove sufficient for the object, they will have no power to convert the real estate into money; for the object of the testator has been accomplished with the proceeds of the personal, and the real estate would descend to the heirs.
■ Had the testator, in this instance, declared that the entire proceeds of the property which he directed to be sold should be divided among the legatees, the conversion in equity would have been complete; or, had he declared that any surplus which might remain after paying the legacies should go to the residuary legatee, the result would have been the *88 same. This doctrine is fully acknowledged by the Supreme Court of the United States in Craig vs. Leslie, 3 Wheat., 338. It was fully laid down and explained by Sir William Grant. M. R., in Manyham vs. Mason, 1 Ves. & B., 410, as follows: “ This is a general bequest of the residue of the testator’s personal estate, and the question is, what was meant to be included under that description. Properly speaking, nothing is the personal estate of a testator that was not so at his death. He may certainly so express himself as to show that something else was intended; but where there is nothing but a direction to sell land, with application of the money to a particular purpose, and a subsequent bequest of the rest and residue of the personal estate, I know of no case in which it has been held that the surplus, after the particular purpose is answered, forms part of the personal estate, so as to pass by the residuary bequest. And in 1 Roper on Leg., 517, the law on this subject is stated as follows: “ Where a testator gives his real and personal property in trust to be sold for particular purposes, but makes a general residuary bequest of his personal estate, such a disposition will not include the produce from the sale of the land, in the absence of a contrary intention expressed or inferred from the will, and for this reason: The surplus of the real estate is not made personal] it, therefore, does not fall within the terms of the bequest. The conversion of the land i nto personalty is merely to answer particular purposes, which, when performed, the residue continuing land and being undisposed of, necessarily results to the heirs. So that if A devise his freehold and personalty, or his freehold estate, to B, in trust, to sell and apply the proceeds in payment of legacies, making no further disposition of the real produce, and then bequeath the residue of his estate, or of his personal estate, to 0, the net surplus of his real estate will not pass to 0, for the reasons before mentioned, but it will be a resulting trust for the heirs of the testator.”
■ See also the Aclcnoyd vs. Smithson, 1 Bro. O. C., 503, and notes to the same case in 1 Lead. O. in Equity, 690. The-rule is well settled that where real and personal estate are both directed to be sold for the payment of debts and legacies, or either debts or legacies, the personal estate is first *89 to be exhausted before resorting to the real; and this rule applies even where there is a general residuary bequest of the personalty. In 1 Roper on Leg., 696, the law is thus stated: “ The rule is general, that in the absence of contrary intention the personal estate is the first and natural fund for the payment of debts and legacies, and the real estate is only to be resorted to in aid of the former; * * * and it seems to be now settled that whether the real estate be devised to a person upon condition of his paying debts and legacies, or be charged with them generally, or whether it be given to trustees for those purposes, and the personal estate is disposed of by a general .residuary bequest, none of these circumstances will prevent the personal fund being applied, in the first instance, to the satisfaction of those demands.”
In the present case there is a residuary bequest, but it seems to be so carefully framed as to give to the legatee nothing except such personal estate as was actually in the possession of the testator at the time of his death, and which might remain after all the debts and legacies should be fully satisfied. We have seen that the personal estate was the primary fund from which the debts and legacies should be paid. We have' seen, also, that in this case the direction to sell the real estate for the purpose of paying the particular legacies was not a conversion of the real estate except for that particular purpose, and then only as an auxiliary fund to the personal estate. It follows, therefore, that the surplus proceeds of the real estate will not go to the residuary legatee as personal estate, but must be divided equally among the heirs of the testator as property not disposed of by his will. The debts are to be first paid, next the legacies ; and both from the personal estate, if that be sufficient. The real estate is to be called upon only to make up for any deficiency of the personal for these purposes. • To the extent that it is not needed, it or its proceeds will go to the heirs at law.